JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARMONIQUE JONES, SAM MYERS, and JARON WILSON, individuals, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>WAL-MART STORES, INC., a Delaware corporation, headquartered in the State of Arkansas and authorized to do business in the State of California, and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. CV 12-10799 MMM (CWx)<br><br>ORDER GRANTING PLAINTIFFS' MOTION FOR REMAND |

On December 19, 2011, Charmonique Jones, Sam Myers, and Jaron Wilson (collectively "plaintiffs") filed this action against Wal-Mart Stores, Inc. in Los Angeles Superior Court.[1] Plaintiffs filed a first amended complaint in state court on March 23, 2012.[2] Walmart removed the action to this court on December 18, 2012, invoking the court's jurisdiction under the Class

---

[1] Notice of Removal ("Removal"), Docket No. 1 (Dec. 18, 2012), ¶ 1.

[2] Declaration of Robert J. Herrington in Support of Notice of Removal ("Herrington Decl."), Docket No. 4 (Dec. 18, 2012), Exh. A ("FAC").

Action Fairness Act ("CAFA"), 28 U.S.C. §§ 1332(d) and 1453, and the court's diversity jurisdiction under 28 U.S.C. § 1332(a).[3] On January 17, 2013, plaintiffs filed a motion to remand the action to Los Angeles Superior Court.[4] Walmart opposes the motion.[5]

Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7.15, the court finds this matter appropriate for decision without oral argument. The hearing calendared for April 15, 2013, is therefore vacated, and the matter taken off calendar.

## I. BACKGROUND

Walmart is a Delaware corporation licensed to do business in California. Its corporate headquarters are in Arkansas.[6] The three named plaintiffs are California citizens.[7]

Plaintiffs allege that Walmart required that they and other putative class members attend store meetings before and after their scheduled work shifts.[8] Plaintiffs allege that the time employees spent at these meetings was not properly entered into Walmart's timekeeping system.[9] As a result, plaintiffs allege, they were not compensated for the time they spent at the meetings, but should have received overtime pay. Plaintiffs bring the action on behalf of all persons who were employed by Walmart in California as non-exempt employees from March 27, 2010 to the present, and who were, during that period, not compensated for all hours worked and/or not paid

---

[3] Removal at 1.

[4] Motion to Remand Case to Los Angeles Superior Court ("Motion"), Docket No. 7 (Jan. 17, 2013); see also Reply in Support of Motion to Remand Case to Los Angeles Superior Court ("Reply"), Docket No. 20 (Mar. 25, 2013).

[5] Opposition to Motion to Remand Case to Los Angeles Superior Court ("Opp."), Docket No. 17 (Mar. 11, 2013).

[6] Removal, ¶ 26.

[7] *Id.*, ¶ 24.

[8] FAC, ¶ 14.

[9] *Id.*

2

overtime wages.[10] They do not allege the number of potential class members.[11]

Plaintiffs assert claims for failure to pay wages in violation of California Labor Code §§ 204 and 218; failure to pay overtime wages in violation of Labor Code §§ 510, 1194 and 1198; failure timely to pay wages owed on termination of employment in violation of Labor Code §§ 201, 202 and 203; failure to itemize wage statements in violation of Labor Code § 226; unfair competition in violation of California's Unfair Competition Law, California's Business & Professions Code § 17200 *et seq.* ("UCL"); and penalties under Labor Code § 2698 *et seq.*[12] Plaintiffs allege that their claims are typical of the class members' claims.[13]

On June 6, 2012, Walmart served interrogatories and requests for admission on plaintiffs.[14] Plaintiffs Jones and Wilson served their responses on July 23, 2012; Myers served his on August 1, 2012.[15] Jones and Myers subsequently served supplemental discovery responses, which Walmart received on November 19, 2012.[16] Unlike the initial discovery responses, the supplemental responses included specific calculations of plaintiffs' alleged damages.

In his supplemental discovery responses, Myers stated that his average salary was $11.50 an hour; that he attended mandatory store meetings at least one time per month; and that the meetings lasted approximately two hours. As a result, Myers asserted, Walmart failed to pay him $1,360 in overtime pay.[17] Jones stated that her average salary was $11.20 an hour; that she

---

[10]FAC at 2.

[11]The notice of removal asserts that the proposed class contains more than 100 members. (Removal, ¶ 18.) It is unclear what the basis for this assertion is, however, as it is not stated.

[12]FAC at 1.

[13]*Id.*, ¶ 8(c).

[14]Removal, ¶ 5; Herrington Decl., Exh. B.

[15]Removal, ¶ 6.

[16]*Id.*, ¶ 7; see also Herrington Decl., Exh. C.

[17]Herrington Decl., Exh. C, Plaintiff Sam Myers' Supplemental Responses to Form Interrogatories Set One ("Myers Supp. Resp.") at 5.

attended mandatory store meetings one or two times a month (or an average of 1.5 meetings a month); and that the meetings lasted one to three hours (or an average of two hours per meeting). Based on these facts, Jones asserted that Walmart owed her unpaid overtime of $1,764.[18]

Walmart alleges that it has employed approximately 105,600 persons in non-exempt positions in the state of California during the class period.[19] It asserts that it employed approximately 62,472 of these individuals for at least a year during the class period.[20]

Jones' supplemental discovery responses reflect that she seeks, in addition to unpaid overtime wages, $2,688 in penalties for failure to pay wages on termination;[21] $4,000 in penalties for failing to itemize wage statements;[22] disgorgement and restitution of $8,452 under California's UCL;[23] $55,600 in penalties under California's Private Attorneys General Act ("PAGA").[24] Myers' supplemental discovery response states that he seeks $2,760 in penalties for failure to pay wages on termination;[25] $4,000 in penalties for failing to itemize wage statements;[26] disgorgement and restitution of $8,120 under California's UCL;[27] and $63,200 in penalties under PAGA.[28]

---

[18]Herrington Decl., Exh. C, Plaintiff Charmonique Jones' Supplemental Responses to Form Interrogatories Set One ("Jones Supp. Resp.") at 3.

[19]Removal, ¶ 21; Herrington Decl., Exh. E.

[20]Removal, ¶ 34.

[21]Jones Supp. Resp. at 8.

[22]*Id.* at 11.

[23]*Id.* at 14.

[24]*Id.* at 16.

[25]Myers Supp. Resp. at 8.

[26]*Id.* at 10.

[27]*Id.* at 13.

[28]*Id.* at 15.

## II. DISCUSSION

### A.     Legal Standard Governing Diversity Jurisdiction

District courts have original jurisdiction over civil actions where the matter in controversy exceeds $75,000 and is between citizens of different states. See 28 U.S.C. § 1332(a). In any case where subject matter jurisdiction is premised on diversity, there must be complete diversity, i.e., all plaintiffs must have citizenship different than all defendants. See *Strawbridge v. Curtis*, 7 U.S. (3 Cranch) 267 (1806). See also *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 67 & n. 3 (1996).

In 2005, Congress enacted the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4. CAFA gives district courts original jurisdiction to hear class actions "in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and "in which[, *inter alia*,] any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2); see also *Luther v. Countrywide Homes Loans Servicing LP*, 533 F.3d 1031, 1033-34 (9th Cir. 2008) ("The Class Action Fairness Act of 2005 § 4(a), 28 U.S.C. § 1332(d)(2), amended the requirements for diversity jurisdiction by granting district courts original jurisdiction over class actions exceeding $5,000,000 in controversy where at least one plaintiff is diverse from at least one defendant. In other words, complete diversity is not required. CAFA also provided for such class actions to be removable to federal court. See 28 U.S.C. § 1453(b). CAFA was enacted, in part, to 'restore the intent of the framers of the United States Constitution by providing for Federal court consideration of interstate cases of national importance under diversity jurisdiction.' Pub.L. No. 109-2, § 2(b)(2), 119 Stat. 4, 5 (codified as a note to 28 U.S.C. § 1711)").

### B.     Legal Standard Governing Removal Jurisdiction

The right to remove a case to federal court is entirely a creature of statute. See *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979). The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case originally filed in state court presents a federal question or is between citizens of different states. See 28 U.S.C. §§ 1441(a), (b). Only state court actions that could originally have been filed in federal court can be removed. 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought

in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending"); see *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987); *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988).

Parties seeking to remove must comply with certain procedural mandates. Among these is a requirement that a notice of removal be filed within thirty days after service of the summons and complaint. 28 U.S.C. § 1446(b); see *Murphy Brothers, Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999). The statute provides for a renewed thirty-day removal period if the original complaint is not removable. This period commences upon defendant's receipt of "an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. . . ." 28 U.S.C. § 1446(b).

The removing defendant bears the burden of establishing that removal is proper. See *Gaus v. Miles*, 980 F. 2d. 564, 566 (9th Cir. 1992); *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988) (citing *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921)); see also *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 403-04 (9th Cir. 1996) (when removing a case to federal court, defendants bear the burden of proving, by a preponderance of the evidence, actual facts sufficient to support jurisdiction). The removal statute is strictly construed against removal, and all doubts respecting jurisdiction are resolved in favor of remand. *Gaus*, 980 F.2d at 566; *Libhart*, 592 F.2d at 1064. As the Ninth Circuit has explained, CAFA does not disturb the traditional rule that the burden of establishing removal jurisdiction is on the proponent of federal jurisdiction. *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006) ("We . . . hold that under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction").

In *Harris v. Bankers Life and Casualty Co.*, 425 F.3d 689 (9th Cir. 2005), the Ninth Circuit clarified certain ambiguities regarding the timely removal requirement. It held:

"The statute provides two thirty-day windows during which a case may be removed
– during the first thirty days after the defendant receives the initial pleading or

>during the first thirty days after the defendant receives a paper 'from which it may first be ascertained that the case is one which is or has become removable' if 'the case stated by the initial pleading is not removable.'
>
>Three removal scenarios are presented in a potential diversity case: 1) the case clearly is removable on the basis of jurisdictional facts apparent from the face of the complaint. . . ; 2) the case clearly is not removable on the basis of jurisdictional facts apparent from the face of the complaint . . . ; or 3) it is unclear from the complaint whether the case is removable. . . . This latter scenario [is] sometimes referred to as an 'indeterminate' pleading. . . ." *Id.* at 692-93 (quoting 28 U.S.C. § 1446(b)).

In *Harris*, the initial pleading did not set forth the citizenship of one defendant. The question, which had been a question on which circuits had disagreed, but on which the Ninth Circuit had not spoken, was whether any burden "lies with the defendant to investigate the necessary jurisdictional facts within the first thirty days of receiving an indeterminate complaint, or whether the determination be limited to the face of the initial pleading." *Id.* at 693.

>The Ninth Circuit concluded that
>
>"notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry. Thus, the first thirty-day requirement is triggered by defendant's receipt of an 'initial pleading' that reveals a basis for removal. If no ground for removal is evident in that pleading, the case is 'not removable' at that stage. In such case, the notice of removal may be filed within thirty days after the defendant receives 'an amended pleading, motion, order or other paper' from which it can be ascertained from the face of the document that removal is proper." *Id.* at 694.

As can be seen, *Harris* plainly contemplates two thirty-day windows. The first commences with service of the initial state court complaint. In a case that is not removable based on the initial complaint, "if it is rendered removable by virtue of a change in the parties or other circumstance

7

revealed in a newly-filed 'paper,' then the second thirty-day window is in play." *Id.*[29]

### C. Whether Plaintiffs' Supplemental Responses Rendered this Case Removable under the Class Action Fairness Act of 2005

#### 1. Whether the Grounds for Removal Could Be Ascertained Were Apparent from the November 19 Discovery Responses

Walmart did not remove this case within thirty days of service of plaintiffs' initial complaint. Under *Harris*, therefore, Walmart must demonstrate that the original complaint did not make it clear that the action was removable, and "point to [its] receipt of any 'paper' that would trigger the extended 30-day removal period." *Kohan Productions Ltd. v. Comerica Bank*, No. CV 10-0034 PSG (AJWx), 2010 WL 956402, *4 (C.D. Cal. Mar. 11, 2010); see also *Harris*, 425 F.3d at 694. Absent such a paper, removal was premature. *B.C. v. Blue Cross of California*, No. CV 11–08961 GAF, 2012 WL 12782, *7 (C.D. Cal. Jan. 3, 2012) ("[R]emoval filed before a plaintiff has served a paper on the defendant demonstrating removability is premature. That rule squares the plain language of § 1446(b) with the Ninth Circuit's holding in *Harris* without creating an unlimited time frame within which a defendant is able to remove to federal court"); *Adelpour v. Panda Express, Inc.*, No. CV 10-02367 MMM, 2010 WL 2384609, *5 (C.D. Cal. June 8, 2010) ("Defendants' request for removal was premature rather than untimely. The thirty-day removal period has not yet begun because Plaintiff's Complaint did not contain adequate grounds to trigger removal and no additional pleadings or papers, as defined by 28 U.S.C. § 1446(b), have provided subsequent grounds for removal," quoting *Rossetto v. Oaktree Capital Management, LLC*, 664 F.Supp.2d 1122, 1129 (D. Haw. 2009)); see also *Abrego Abrego*, 443 F.3d at 691-92

---

[29]The *Harris* court discussed in detail the Fourth Circuit's opinion in *Lovern v. General Motors Corp.*, 121 F.3d 160 (4th Cir. 1997). It noted that, "[i]n rejecting the defendant's subjective knowledge as a test for notice, the Fourth Circuit emphasized reliance on 'the four corners of the initial pleading or subsequent paper.'" *Harris*, 425 F.3d at 695 (quoting *Lovern*, 121 F.3d at 162). In *Lovern*, the Fourth Circuit held that it would "allow the court to rely on the face of the initial pleading and on the documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal, requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper." *Id.* (quoting *Lovern*, 121 F.3d at 162).

8

("Dow removed this action to district court a mere seven days after the workers filed their First Amended Complaint, and less than a month after the case was filed. Once in federal court, Dow failed to present to the district court any pleading, evidence, or admission that establishes that it is more likely than not that jurisdiction lies. On these facts, it is well within the court's discretion to remand to state court rather than ordering jurisdictional discovery, with the knowledge that later-discovered facts may prompt a second attempt at removal. Doing so avoids encouraging the sort of premature removal presented to us here").

The initial complaint did not specify the amount of damages, penalties, and attorneys' fees plaintiffs seek on their own behalf or on behalf of the putative class.[30] Although plaintiffs allege that Walmart failed to compensate them for meetings they attended before and after their scheduled shifts, their complaint does not allege how much they were underpaid.[31] The original complaint did not, therefore, reveal the amount in controversy or make it clear that the action was removable,

Walmart contends that the supplemental discovery responses plaintiffs served on November 19, 2012 constitute "other paper" that rendered the case removable during the second thirty-day window contemplated by *Harris*. It argues plaintiffs' responses show that the amount in controversy "greatly exceeds $5 million on Plaintiffs' first cause of action alone."[32] The discovery responses do so, Walmart contends, because they specify the damages claimed by each named plaintiff. It asserts that a conservative estimate of the amount in controversy on plaintiffs' overtime claim can be calculated by averaging the amount of overtime claimed by the named plaintiffs, and multiplying that sum by (a) an overtime wage based on California's minimum wage and (b) a class size of 62,472. Based on this calculation, Walmart estimates that the amount in

---

[30] See generally Herrington Decl., Exh. F; see also Removal, ¶ 2.

[31] *Id.*

[32] Removal, ¶ 34.

9

controversy on plaintiffs' overtime claim is "at least $14,993,280."[33]

The class size of 62,472 Walmart uses to calculate the amount in controversy is not, however, information that appears within the four corners of plaintiffs' discovery responses. Rather, it derives from Walmart's own investigation and responses to interrogatories, which it served on plaintiffs on December 17, 2012.[34] Plaintiff's November 19 discovery responses do not specify a class size.[35] Because information concerning the size of the putative class is not included "in the four corners of the initial pleading or subsequent paper," Walmart cannot rely on it to trigger a second 30-day removal period under § 1446(b). *Harris*, 425 F.3d at 695 (quoting *Lovern*, 121 F.3d at 162); see also *Rossetto*, 664 F.Supp.2d at 1129.

Furthermore, the requirement that the removing defendant receive a pleading or "other paper" means that the "document that triggers the thirty-day removal period cannot be one created by the defendant." *Rossetto*, 664 F.Supp.2d at 1129. Thus, "the 'amended pleading, motion, order or other paper' must derive from 'either the voluntary act of the plaintiff in the state court, or other acts or events not the product of the removing defendant's activity.'" *Smith v. Int'l Harvester Co.*, 621 F.Supp. 1005, 1007 (D. Nev. 1985) (quoting *Potter v. Carvel Stores of New York, Inc.*, 203 F.Supp. 462, 467 (D. Md. 1962)). See also *Addo v. Globe Life & Accident Ins. Co.*, 230 F.3d 759, 762 (5th Cir. 2000) ("[T]he 'other paper' must result from the voluntary act of a plaintiff which gives the defendant notice of the changed circumstances which now support federal jurisdiction"). Accordingly, Walmart cannot base its calculation of the amount in controversy on an estimate of class size that did not result from a voluntary act of the plaintiffs,

---

[33]*Id*. To reach this sum, Walmart averaged the number of mandatory store meetings Jones and Myers attended on a monthly basis (1.25), multipled that by the average length of the meetings (2 hours), and multiplied the product by the California minimum wage ($8) to arrive at a sum of $240 in overtime owed to each putative class member per year. Walmart then multiplied $240 by the number of associates employed in non-exempt positions during the class period (62,472) to arrive at an amount in controversy of $14,993,280.

[34]*Id.*, ¶ 34.

[35]Walmart does not contend that any of the pleadings or documents it received from plaintiffs prior to November 19 specified a class size.

but instead from its own investigation.

### 2. Whether Walmart Has Shown by a Preponderance of the Evidence That the Amount in Controversy Exceeds the Statutory Amount

Even if the court were to overlook the defect in Walmart's removal discussed above, it would still conclude that Walmart has failed to meet its burden of showing that the amount in controversy exceeds $5,000,000. The notice of removal does not adequately establish that the court can exercise jurisdiction under CAFA, since Walmart's damages calculation is based on a class size that is not clearly alleged by the complaint or supported by evidence.

"[W]hen the complaint does not contain any specific amount of damages sought, the party seeking removal under diversity bears the burden of showing, by a preponderance of the evidence, that the amount in controversy exceeds the statutory amount." *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007). In applying the preponderance of the evidence standard to California Labor Code claims to assess whether a removing defendant has met its burden, many California district courts have refused to credit damage calculations based on variables not clearly suggested by the complaint or supported by evidence, concluding that the calculations are mere conjecture. In *Martinez v. Morgan Stanley*, Civil No. 09cv2937–L, 2010 WL 3123175, *5 (S.D. Cal. Aug. 9, 2010), for example, defendants sought to remove a wage-and-hour class action under CAFA and calculated the amount in controversy based in part on an assumption that every class member worked four hours of unpaid overtime every day. The court rejected this assumption and the calculation of potential class damages based on it. It stated that "[a]lthough Plaintiff alleged that her claims are typical of the class as a whole and that class members consistently worked overtime, this does not provide a basis to assume that every class member worked any particular number of overtime hours." *Id*. The court similarly rejected the calculation of meal/rest period violations, waiting time penalties, and wage statement penalties because the variables used were not clearly suggested by the complaint or supported by evidence. *Id.* at *6. See also *Trang v. Turbine Engine components Technologies Corp.*, No. CV 12–07658 DDP (RZx), 2012 WL 6618854 (C.D. Cal. Dec. 19, 2012) (declining to accept defendant's calculation of the amount in controversy in a case that alleged various Labor Code violations

because it "assumed that every putative class member suffered a violation of every cause of action application to [him or her] during every pay period," and this was inconsistent "with [the] Ninth Circuit's rejection of "[d]efendant's speculation and conjecture" as the basis of diversity jurisdiction"); *Smith*, 2010 WL 1838726 s *5 ("Because defendants' calculation of damages for alleged overtime and missed meal and rest periods is speculative and based on conjecture, the court limits the calculation of the amount in controversy to the reasonably certain amount of statutory penalties that could be claimed"); *Roth v. Comerica Bank*, 799 F.Supp.2d 1107, 1115 (C.D. Cal. 2010) ("When applying the preponderance of the evidence standard to California Labor Code claims, many California district courts have refused to credit damage calculations based on variables not clearly suggested by the complaint or supported by evidence, concluding that the calculations are mere conjecture"); *Campbell v. Vitran Express, Inc.*, No. CV-10-04442-RGK(SHx), 2010 WL 4971944, *4 (C.D. Cal. Aug. 16, 2010) ("While Defendant provided a great deal more evidence in its opposition to Plaintiffs' Motion to Remand, the proffered calculations are tabulated based on many assumptions. Defendant has left the Court to speculate as to the amount of unpaid wages owed. Such uncertainty cannot overcome the heavy burden of establishing removal, as 'we cannot base our jurisdiction on [d]efendant's speculation and conjecture'"); *Guerrero v. R.R. Donnelley & Sons Co.*, ED CV 10-776 PA (AGRx), slip op. at 3 (C.D. Cal. July 26, 2010) ("Defendant's assumptions about the extent of Defendant's violations and the number of times that each class member experienced a violation are not supported by any allegations in the Complaint or any 'summary-judgment-type' evidence. Rather, Defendant's assumptions are the type of speculation and conjecture that are insufficient to show that the amount in controversy exceeds $5,000,000").

Walmart calculates the amount in controversy arising from plaintiffs' overtime claims using an estimated class size of 62,742, representing that it has or had 62,472 associates employed in non-exempt positions in California during the putative class period. Plaintiffs have not, however, defined the class so broadly. Rather, they "bring this action on behalf of a plaintiff class which consists of current and former non-exempt employees of Wal-Mart in the State of California *who, during the time period March 27, 2010 to the present (the "Class Period") were not compensated*

12

*for all hours worked and/or not paid overtime wages for hours worked over eight (8) in a day and/or over forty (40) in a week. . . .*"[36] Plaintiffs allege that the putative class consists of individuals "required by Wal-Mart to attend store meetings before and after their shifts," who were not paid "retro pay" at the appropriate rate for the time spent in the meetings.[37] They assert that attending the meetings was frequently in addition to an eight hour day, requiring that the employee be paid overtime.[38] Plaintiffs do not allege that Walmart required all associates employed in California to attend meetings in addition to their regularly scheduled work shifts; that no Walmart employee received "retro pay" for attending the meetings; or that all employees were paid at regular hourly rates rather than overtime rates. Walmart, for its part, has adduced no evidence of this kind.[39] Walmart has thus failed to show by a preponderance of the evidence that the amount in controversy is properly based on a class size of 62,742. See *Trang Nguyen v.*

---

[36]FAC, ¶ 3 (emphasis added).

[37]Although the complaint does not clearly define "retro pay," the phrase appears to refer to pay for work performed outside an employee's regular work schedule, which must be manually added to time sheets by human resources employees, and which is paid retroactively during the next pay period. (See Motion at 3.)

[38]FAC, ¶¶ 14-16 (defining the actionable conduct).

[39]Walmart asserts that plaintiffs' allegations provide a reasonable basis for its estimate of class size, citing allegations that class members were "required" to attend "mandatory" store meetings pursuant to "uniform company policy and practice." (Opp. at 15.) The allegations it cites specifically address policies and practices affecting the class members, however. (See, e.g., FAC, ¶¶ 21-22 ("Walmart, as a matter of established company policy and procedure . . . scheduled, required, suffered, and/or permitted plaintiffs and the other members of the Class to work without paying them for each and every hour worked during the Class Period. Walmart's pattern, practice, and uniform administration of its corporate policy of illegally denying employees compensation, as described herein, is unlawful and entitles plaintiffs and the Class members to recover . . . the unpaid balance of the straight time compensation"). Plaintiffs do not allege that the Walmart policy and practices that deprived them of wages were applied to all associates; they do not allege, for example, that all employees were required to attend meetings before or after regularly-scheduled work hours. Rather, the allegations Walmart cites are generalized, conclusory references to the company's failure to pay wages due; they do not provide a sufficient basis upon which to conclude that all California associates were required to attend meetings in addition to their regular work shift and were not paid for doing so.

13

*Nordstrom, Inc.*, No. SACV 11–01334 DDP, 2012 WL 1956905, *2 (C.D. Cal. May 30, 2012) ("[T]he basis for Nordstrom's estimates of class . . . size is . . . unclear. . . . Nordstrom's calculations assume that every employee who ceased employment was 1) owed unpaid wages at the time of separation and 2) did not receive the unpaid wages within thirty days of separation. Plaintiff, however, has not made any such allegation, nor does Nordstrom provide any evidence that such is the case. In addition, Nordstrom has neither asserted nor provided evidence establishing that every terminated employee was subject to the same wage policies and/or practices, which may well have varied from region to region, store to store, or even supervisor to supervisor. Courts presented with similar evidentiary deficiencies have regularly found CAFA's jurisdictional requirements unmet"); *Pittman v. Westgate Planet Hollywood Las Vegas, LLC*, No. 2:11–cv–1149–LRH–PAL, 2012 WL 254115, *1 (D. Nev. Jan. 27, 2012) ("Defendants argue that the amount in controversy is reached by multiplying the estimated class size by the estimated recovery per person of a similar action against defendants currently in federal court. However, defendants' calculations are not based on any real class size or recovery, but only on estimated class size and recovery. Thus, defendants' stated amount in controversy is based on 'speculation and conjecture' rather than actual evidence. Therefore, the court finds that defendants have not established the $5 million amount in controversy by a preponderance of the evidence, and shall remand this matter accordingly" (internal citations omitted)).

In sum, because the class size is not apparent on the face of plaintiffs' November 19 discovery responses, and because Walmart's amount in controversy calculation is based on a speculative estimate of class size, Walmart has failed to meet its burden of showing that this case was removed under CAFA.

### D. Whether Plaintiffs' Supplemental Responses Render the Case Removable Under 28 U.S.C. § 1332(a)

Plaintiffs' motion to remand does not address Walmart's alternate basis for removal, i.e., its assertion that the court has diversity jurisdiction under 28 U.S.C. § 1332(a). As a result, Walmart asserts that plaintiffs have waived any argument that the requirements for diversity jurisdiction set forth in § 1332(a) are not satisfied. "[A] party may not waive a defect in

subject-matter jurisdiction or invoke federal jurisdiction simply by consent." *United States v. Luong,* 627 F.3d 1306, 1310 (9th Cir. 2010) (citing *Penn. v. Union Gas Co.*, 491 U.S. 1, 26 (1989), overruled on other grounds by *Seminole Tribe v. Florida*, 517 U.S. 44 (1996)); see also *Proctor v. Vishay Intertech. Inc.*, 584 F.3d 1208, 1219 (9th Cir. 2009) ("Parties 'cannot waive . . . a court's lack of subject matter jurisdiction," quoting *Stock West, Inc. v. Confederated Tribes of the Colville Reservation*, 873 F.2d 1221, 1228 (9th Cir. 1989)). "Regardless of the parties' concessions, therefore, [the court] must satisfy [itself] that this lawsuit was in fact removable[.]" *Proctor*, 584 F.3d at 1219.

### 1.  Damages and Penalties

Walmart contends that plaintiffs' November 19 discovery responses demonstrate that the named plaintiffs each seek damages and civil penalties that exceed $75,000. As an example, Myers' supplemental discovery responses state that he seeks $1,370 in unpaid overtime wages; $2,760 in penalties for failure to pay wages on termination; $4,000 in penalties for failing to itemize wage statements; disgorgement and restitution of $8,120 under California's UCL; and $63,200 in penalties under California's Private Attorneys General Act. Walmart argues that these amounts total $80,800, and thus that Myers' discovery responses demonstrate the amount in controversy requirement is met.

In their reply, plaintiffs argue that Walmart's calculation is flawed. Specifically, they contend that Walmart double-counts the amount of unpaid overtime wages they seek. They assert that the amount in controversy should not include both the amount claimed as compensatory damages and the amount of restitution and disgorgement sought on the UCL claim. Plaintiffs contend that if they "recover[ ] all [their] damages, there is nothing to restitute." Having reviewed the discovery responses and Walmart's notice of removal, the court agrees that Walmart has engaged in double-counting.[40] Myers' discovery responses state that the $8,120 he seeks in disgorgement and restitution on the UCL claim consists of unpaid overtime, waiting time

---

[40]Removal, ¶ 43.

penalties, and damages for failure to itemize pay statements.[41] The sum is thus duplicative of the amounts he seeks in his first and second causes of action for failure to pay overtime wages, his third cause of action for waiting time penalties, and his fourth cause seeking penalties for failure to itemize wage statements. The court concludes, consequently, that Myers' discovery responses reveal that the amount in controversy on his claims is only $68,846: $1,370 in unpaid wages, $2,760 in waiting time penalties, $4,000 in penalties for failure to itemize wage statements, and $63,200 in PAGA penalties. This is less than the jurisdictional threshold of $75,000 established by § 1332(a). Applying the same analysis, Jones' discovery responses reveal an amount in controversy of $64,052, also less than § 1332(a)'s jurisdictional minimum.[42] Standing alone, therefore, the damages and civil penalties identified in plaintiffs' discovery responses do not establish that the amount in controversy exceeds $75,000.

### 2. Attorneys' Fees

Jones and Myers both seek attorneys' fees. Walmart asserts that the amount of damages and penalties each named plaintiff claims will exceed the jurisdictional minimum required by § 1332(a) if they recover attorneys' fees.[43] "Attorneys' fees are properly included in the amount in controversy for purposes of evaluating diversity jurisdiction." *Jasso v. Money Mart Exp., Inc.*, No. 11–CV–5500 YGR, 2012 WL 699465, *6 (N.D. Cal. Mar. 1, 2012) (citing *Guglielmino*, 506 F.3d at 700); see also *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("where an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, such fees may be included in the amount in controversy"); *Goldberg v. CPC Int'l, Inc.*, 678 F.2d 1365, 1367 (9th Cir. 1982). Nonetheless, the removing defendant must

---

[41]Myers Supp. Resp. at 13.

[42]Plaintiffs' claimed damages and penalties cannot be aggregated to establish jurisdiction. "When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount." *Troy Bank v. G.A. Whitehead & Co.*, 222 U.S. 39, 40 (1911); see also *Gibson v. Chrysler Corp.*, 261 F.3d 927, 943 (9th Cir. 2001).

[43]Removal, ¶ 43

16

demonstrate the amount of attorneys' fees likely to be sought by a preponderance of the evidence. Cf. *Peterson v. BASF Corp.*, 12 F.Supp.2d 964, 968 (D. Minn. 1998) (holding that a district court scrutinizes both punitive damages and attorneys' fees claims more closely than a claim for actual damages in determining the amount in controversy). It is not sufficient simply to note that attorneys' fees are recoverable; rather, some breakdown or estimate must be provided and justified. See, e.g., *Faulkner v. Astro-Med, Inc.*, 1999 WL 820198, *4 (N.D. Cal. Oct. 4, 1999). Where a removing defendant does not provide an estimation of the amount of attorneys' fees at issue, the court need not take fees into account. *Velasquez v. HMS Host USA, Inc.*, No. 2:12–cv–02312–MCE, 2012 WL 6049608, *9 (E.D. Cal. Dec. 5, 2012); *Ajimatanrareje v. Metropolitan Life Ins. Co.*, No. C 99–0614 SI ARB, 1999 WL 319216, *5 (N.D. Cal. 1999).

Walmart has adduced no evidence regarding the amount of attorneys' fees each named plaintiff will likely seek to recover.[44] Consequently, it has failed to support its contention that the attorneys' fees sought satisfy the amount in controversy requirement or that they, in combination with other damages, will push the amount in controversy over the $75,000 minimum. In the absence of any evidence on this point, Walmart has failed to meet its burden of proof that the amount in controversy based on attorneys' fees exceeds $75,000.[45] *Id.*; see also *Richardson v.*

---

[44]In its opposition, Walmart asserts that attorneys' fees awards of 20-30% of the common fund recovery in wage and hour class actions are frequent. (Opp. at 14; see also Removal, ¶ 37.) It makes no argument concerning the amount of attorneys' fees ordinarily recovered by individual plaintiffs pursuing such claims, but observes that the amount would likely be more than the difference between each plaintiff's claimed damages and $75,000. (Opp. at 8; see also Removal, ¶ 43.) Such an offhand observation falls short of Walmart's burden of proving each plaintiff's likely attorneys' fees recovery.

[45]Even had Walmart offered a detailed "witestimate of plaintiffs' attorneys' fees, courts within the Ninth Circuit are split as to whether a court should consider only attorneys' fees incurred as of the time of removal or fees reasonably likely to be incurred after the date of removal. Compare *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1011 n. 4 (N.D. Cal. 2002) ("While an estimate of the amount in controversy must be made based on facts known at the time of removal, that does not imply that items such as future income loss, damages, or attorneys fees likely to be incurred cannot be estimated at the time of removal"); *Simmons v. PCR Technology*, 209 F.Supp.2d 1029, 1034-35 (N.D. Cal. 2002) ("Such fees necessarily accrue until the action is resolved. Thus, the Ninth Circuit must have anticipated that district courts would

*Servicemaster Global Holdings Inc.*, No. C 09–4044 SI, 2009 WL 4981149, *4 (N.D. Cal. Dec.15, 2009) ("Plaintiff estimates that attorney fees for this case would exceed $75,000 based on his counsel's declaration that attorney fees for a typical employment case exceed[ ] $75,000. However, the Court is not persuaded by plaintiff's argument, particularly in light of the fact that plaintiff does not plead a specific amount of attorney fees and does not provide any factual information detailing how attorney fees for this case would reach over $75,000. Plaintiff has not submitted any evidence that sets forth a reasonable estimate of attorney fees likely to be incurred based on plaintiff's counsel's hourly rate, the number of hours counsel expects to spend on this case, attorney fees that have accrued to date, or attorney fee awards in similar cases. In other words, plaintiff's complaint, as currently pled, provides no basis for federal diversity jurisdiction," citing *Brady v. Mercedes–Benz USA, Inc.*, 243 F.Supp.2d 1004, 1011 (N.D. Cal. 2004)).

///

---

project fees beyond removal") with *Green v. Party City Corp.*, No. CV-01-09681 CAS (Ex), 2002 WL 553219, *2 & n. 3 (C.D. Cal. Apr. 9, 2002) (calculating attorneys' fees based "only [on] work done by plaintiff's counsel prior to removal"); *Faulkner v. Astro-Med, Inc.*, No. C 99-2562 SI, 1999 WL 820198, *4 (N.D. Cal. Oct. 4, 1999) ("When estimating attorney's fees for the purposes of establishing jurisdiction, the only fees that can be considered are those incurred as of the date of removal," citing *Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir. 1993)); *Conrad Associates v. Hartford Accident & Indemnity Co.*, 994 F.Supp. 1196, 1200 (N.D. Cal. 1998) (declining to consider post-removal events in calculation of attorneys' fees for removal purposes). See also *Giordano v. Park Avenue Life Insurance Co.*, No. CV 09-01405 SJO (FMOx), 2009 WL 1474945, *3 (C.D. Cal. Apr. 7, 2009) ("Where attorneys' fees are to be included in the amount in controversy, 'district courts in this circuit have disagreed [as to] whether attorneys' fees incurred after the date of removal are properly included in the amount in controversy:' some courts refuse to consider attorneys' fees incurred after removal whereas others include a 'reasonable estimate of attorneys['] fees likely to be expended,'" quoting *Burk v. Medical Savings Insurance Co.*, 348 F.Supp.2d 1063, 1068-69 (D. Ariz. 2004) (alterations original)). Because Walmart has adduced no "summary-judgment-type evidence" regarding the likely amount of plaintiff's attorneys' fees, the court need not resolve whether it should consider attorneys' fees incurred as of the date of removal or fees reasonably likely to be incurred after the date of removal. Under either approach, Walmart has adduced no evidence concerning the amount of work plaintiffs' counsel performed prior to the date of removal or its likely value.

## III. CONCLUSION

Because Walmart has not met its burden of showing that the court has jurisdiction under CAFA or § 1332(a), plaintiffs' motion to remand is granted. For the reasons stated, the court concludes that it lacks jurisdiction to hear this action. The court directs the clerk to remand the case to Los Angeles Superior Court forthwith.

DATED: April 12, 2013

_____
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

**JS-6**